UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWARD WICKS,

    Plaintiff,

v.

RANDY BARRON, et al.,

    Defendants.

No. 12 CV 3478

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a landlord, alleges defendants, a city and city officials, violated his constitutional rights and Illinois law by unlawfully and baselessly interfering with his ability to maintain and operate residential rental property. Defendants deny these allegations and have moved for summary judgment on all claims. For the following reasons, the motion is granted.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Local Rule 56.1 requires a party moving for summary judgment to file a statement of material facts consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). The non-moving party is then required to file a response to the movant's statement, containing "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C).

In this case, defendants moved for summary judgment and complied with the requirements of Local Rule 56.1(a). Defendants also satisfied their obligation under Local Rule 56.2 to serve on plaintiff, who was pro se when the motion was filed, the "Notice to Pro Se Litigants Opposing Summary Judgment." Despite being served with this notice, plaintiff failed to file either a brief in opposition to defendants' motion or a response under Local Rule 56.1(b)(3). Accordingly, the material facts contained in defendants' statement of facts are deemed admitted and undisputed for the purpose of the present motion.

## II. Background

Plaintiff Edward Wicks and former-plaintiff Akmed Bey[1] were landlords with properties in Calumet City, Illinois. [14] ¶¶ 4-6, 12-16. At all relevant times, Wicks owned a property at 1658 Patricia Court and Bey owned a property at 75 Paxton Avenue. *Id.* ¶ 14. Wicks and Bey rented these residences primarily to tenants who received assistance under Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437f). *Id.* ¶ 18.

The First Amended Complaint alleges that in April 2010, Bey and Wicks called Calumet City for assistance with a backed up sewer at the 75 Paxton property. [14] ¶ 20. The city refused to help, telling them instead to hire a private contractor. *Id.* Defendant Calumet City—through defendant Building Commissioner Randy Barron and defendant city employee Tom Gandolfi[2]—proceeded to take "multiple adverse and illegal actions" against Wicks and Bey, including forcibly entering the properties, evicting the tenants, fining Bey and Wicks, denying them permits, condemning the properties, instituting a demolition action, and towing Wicks's van, all without a lawful basis. *Id.* ¶¶ 5, 7, 21-45.[3] Allegedly, this course was followed because Wicks and Bey were African American as well as Section 8 landlords. *Id.* ¶¶ 27, 63.

---

[1] This case was originally filed with Wicks and Bey as co-plaintiffs. [1]. On February 7, 2013, it was dismissed as to them both for want of prosecution. [24]. The dismissal was later vacated as to Wicks alone. [40], [41].

[2] Gandolfi died on August 15, 2013. [86] ¶ 7.

[3] The First Amended Complaint is also brought against "an unknown number of unnamed City of Calumet City Police Officers." [14] ¶ 10.

3

The First Amended Complaint alleges claims for (1) unreasonable search and seizure, (2) violation of due process, (3) violation of equal protection, (4) abuse of process, (5) *Monell* liability, (6) takings, and (7) injunctive relief. Calumet City, Barron, and Gandolfi have moved for summary judgment on all claims.

## III. Analysis

### A. 75 Paxton Avenue

According to the complaint, Bey has owned the property at 75 Paxton Avenue since about September 15, 2004. [14] ¶¶ 14-15. The complaint alleges that Wicks served as Bey's "agent in connection with all aspects of 75 Paxton," but it does not explain what that means. *Id.* Nothing in the amended complaint or record suggests that Wicks ever lived at 75 Paxton Avenue.

Because Wicks neither owned nor lived in 75 Paxton, he—the sole plaintiff—has no standing to assert any of the claims brought in relation to it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For a particular plaintiff to have standing to sue in federal court, he must have suffered an invasion of a legally protected interest. *Id.* Neither the complaint nor the record evinces any legal interest Wicks had in the property.

Defendants' motion is therefore granted as to all claims premised on the 75 Paxton Avenue property.

### B. Count I – Unreasonable Search and Seizure Claims

Wicks alleges three specific violations of his fourth-amendment right to be free from unreasonable searches and seizures: (1) the forcible entry into 1658

4

Patricia on April 6, 2011, without legal cause, including the eviction of all tenants without a court order; (2) the changing of the locks at 1658 Patricia on April 19, 2011, without obtaining a court order; and (3) the towing of Wicks's van on May 28, 2011. [14] ¶ 52. These claims are brought against Barron and Gandolfi.

First, the touchstone of Fourth Amendment unreasonable-search analysis is whether a person has "a constitutionally protected reasonable expectation of privacy." *See California v. Ciraolo*, 476 U.S. 207, 211 (1986). Determining whether one has such an expectation involves a two-part inquiry: (1) whether the individual had a subjective expectation of privacy; and (2) whether that expectation of privacy is one that society accepts as reasonable. *Ciraolo*, 476 U.S. at 211. Because a landlord has turned over possession and use of an apartment to his tenants, he does not have a protected reasonable expectation of privacy in a rented apartment. *See Johnson v. Weaver*, 248 Fed. App'x 694, 697 (6th Cir. 2007). Accordingly, Wicks does not have standing to assert these unreasonable search claims concerning his rental property.

Second, a government official may be held liable under § 1983 only for his personal involvement in a constitutional violation. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). The record shows that Barron's only involvement with 1658 Patricia was (1) being told by the Fair Housing Administrator—who himself had been contacted by the tenants—that the building was in shambles (evidenced by pictures) and had gone without the required rental inspections since 2006; (2) going to the property one time and observing its broken windows from the outside; and (3)

approving the Fair Housing Administrator's request, on that basis, that a "not approved for occupancy" sticker be placed on the property. [86] ¶ 52. The record contains no evidence that Barron or Gandolfi had any personal involvement with any tenants being evicted from 1658 Patricia or with the property's locks being changed.

Likewise, the record contains no evidence from which a jury could reasonably conclude that Barron or Gandolfi was personally involved with Wicks's van being towed. To the contrary, the record demonstrates that the van was towed by a Calumet City police officer because it bore a false registration. *Id*. ¶¶ 66-69.

Defendants' motion is granted on Count I.

### C. Count II – Due Process Claims

Wicks alleges four specific violations of his rights to procedural and substantive due process: (1) the searching and seizing of 1658 Patricia without proper notice or a court order; (2) the unreasonable denial of permits to perform work on 1658 Patricia which defendants said was necessary; (3) the submission of false inspection reports for 1658 Patricia; and (4) the failure to permit Wicks's tenants to reside in 1658 Patricia. [14] ¶ 55. These claims are brought against Barron and Gandolfi.

"To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must demonstrate that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of

6

law." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010). Where the deprivation is the result of "random and unauthorized acts"—as opposed to "established state procedure"—the deprived person is entitled only to a meaningful post-deprivation remedy. *Id.* at 944. Consequently, a plaintiff bringing a procedural due process claim must allege and prove either that he availed himself of the state post-deprivation remedies, or that the available remedies were inadequate. *Id.* Failure to do so is fatal to the claim. *Id.*

Here, the alleged deprivations, if true, were not the product of established Illinois procedures, so Wicks was entitled only to post-deprivation remedies. Yet Wicks does not allege that he availed himself of such remedies after these deprivations, or that the available remedies were inadequate. The record likewise contains nothing to suggest that either precondition was met. The procedural due process claims therefore fail.

"Both the Supreme Court and [the Seventh Circuit] have emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (internal quotation omitted). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Id.* "And when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will

7

even engage in this deferential rational-basis review." *Id.* (internal quotation omitted).

As noted, Wicks has failed to allege or show that the state-law remedies for the claimed deprivation of his property interests were inadequate. In addition, as discussed above and below, the record contains no evidence that Wicks suffered any independent constitutional violation. The substantive due process claims therefore fail as well.

Defendants' motion is granted on Count II.

### D. Count III – Equal Protection Claims

Wicks alleges four specific violations of his right to equal protection of laws: (1) denying Wicks the ability to rent 1658 Patricia; (2) refusing to approve work and occupancy permits for 1658 Patricia; (3) "enforc[ing] Calumet City ordinances disparately to different classes"; and (4) "issu[ing] housing violation notices disparately to different classes." [14] ¶ 59. Wicks contends that, in each instance, he was treated differently because he is African American. *Id.* ¶¶ 60, 63. These claims are brought against Barron and Gandolfi.

All equal protection claims are based on the principle that, under "like circumstances and conditions," people must be treated alike, unless there is a rational reason for treating them differently. *See Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008). Thus, a plaintiff bringing such a claim must present evidence of a similarly situated individual who was intentionally treated differently than the plaintiff. *McDonald v. Village of Winnetka*, 371 F.3d

992, 1009 (7th Cir. 2004). The record in this case contains no evidence of any similarly situated, non-African American landlords being treated differently from Wicks. Although Wicks testified that he observed repair work being performed at other properties in Calumet City, he had no knowledge of whether those properties had any code violations, whether the owners had obtained annual rental inspections or occupancy permits, or whether the owners had submitted appropriate permit applications. [86] ¶ 60. Nor did Wicks have any information about how Calumet City or its employees otherwise treated white landlords or other African American landlords. *Id.* ¶ 62. One witness, Marvin Newton, who is an African American landlord, testified that he never had any trouble with the city or its employees because of his race, and that he annually had inspections and received permits from the city. *Id.* ¶ 63.

Defendants' motion is granted on Count III.

### E. Count IV – Abuse of Process Claims

Wicks alleges four specific claims for the state-law tort of abuse of process, all of which pertain to the 75 Paxton property: (1) filing a demolition action in the Circuit Court of Cook County; (2) entering the property without a court order and breaking the door, gate, windows, and locks; (3) "appearing before a different Cook County Judge than the one assigned to the demolition action . . . in order to obtain a temporary restraining order . . ."; and (4) "issuing Plaintiffs a ticket for having grass too long on May 11, 2011, despite ordering Plaintiffs to leave the residence on May 7, 2011, when they appeared at 75 Paxton for [the] intended purpose of cutting the

9

grass and weeds." [14] ¶ 66. These claims are brought against Barron, Gandolfi, and, on the basis of vicarious liability, Calumet City.

For the reasons given in section III.A, Wicks lacks standing to bring the first three of these claims, which all have to do with alleged invasions of legally protected interests in 75 Paxton. The fourth claim is not precluded on this basis because it concerns "Plaintiffs" being individually issued a ticket. It is conceivable that some law enforcement officer issued Wicks a ticket for the grass, even though Wicks had no legal interest in the property.

Nevertheless, the record contains insufficient evidence to support an abuse of process claim. "Abuse of process is defined as the misuse of the legal process to accomplish some purpose outside the scope of the process itself." *Kumar v. Bornstein*, 354 Ill.App.3d 159, 165 (2d Dist. 2004). The elements necessary to prove this claim are "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Id*. "In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment." *Id*. Here, the record contains no evidence that could reasonably support the inference that the person who issued Wicks the ticket for the grass (assuming Wicks received a ticket), actually had an ulterior purpose or motive. There is likewise no support for the inference that either Barron or Gandolfi issued the ticket. Finally, the city is not liable under a

respondeat superior theory because there is no evidence that a city employee is liable.

Defendants' motion is granted on Count IV.

**F.      Count V – *Monell* Claims**

Wicks's *Monell* claim alleges that the City of Calumet "knowingly, and with willful and deliberate indifference . . . maintained a widespread custom and practice of allowing Randy Barron and the Inspection Services Department . . . to engage in multiple unlawful acts," including: (1) "searching and seizing properties without proper notice or a Court order in violation of the Fourth Amendment"; (2) "issuing false inspection reports"; (3) "filing demolition actions in the Circuit Court of Cook County without legal cause to do so"; (4) "enforcing Calumet City ordinances disparately to different classes"; and (5) "issuing housing violation notices disparately to different classes." [14] ¶ 73.

After a defendant moves for summary judgment on a *Monell* claim, the plaintiff is "merely required to document sufficient evidence to allow a jury to make a reasonable inference that [the municipality] had a widespread custom or practice that caused a cognizable injury to [the plaintiff]." *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). In this case, defendants moved for summary judgment but plaintiff documented no evidence at all. Further, the record that does exist offers no support for the inference that the few alleged actions taken toward Wicks were anything other than one-off incidents. *See Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014).

11

Defendants' motion is granted on Count V.

### G. Count VI – Takings Claims

Wicks alleges four specific takings claims: (1) conducting a regulatory taking of 1658 Patricia without just cause; (2) denying access to, and the ability to rent, 1658 Patricia; (3) refusing to approve work and occupancy permits for 1658 Patricia; and (4) using the Calumet City housing code to prohibit habitation in 1658 Patricia without just cause. [14] ¶ 78. These claims are brought against Barron, Gandolfi, and Calumet City.

"[U]nder *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192-94 (1985), . . . a federal takings claim is not ripe until the decision to 'take' property is final and the plaintiff has exhausted state mechanisms for obtaining compensation." *Everson v. City of Weyauwega*, 573 Fed. App'x 599, 600 (7th Cir. 2014). Illinois provides mechanisms for obtaining compensation. *See Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015). Yet Wicks neither alleged nor demonstrated that he exhausted them.

Defendants' motion is granted on Count VI.

### H. Count VII – Injunctive Relief Claims

Wicks claims he is entitled to injunctive relief pursuant to 18 U.S.C. § 248(c)(1)(B)—a criminal civil rights statute entitled "Freedom of access to clinic entrances," which prohibits people from obstructing access to reproductive health services. This claim is plainly brought in error and, needless to say, nothing in the pleadings or record supports it.

Defendants' motion is granted on Count VII.

## IV. Conclusion

Defendants' motion [84] is granted. Enter judgment in favor of defendants, and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 4/8/15